EXHIBIT 1



# COMMERCIAL LEASE AGREEMENT

This **Commercial Lease Agreement** is made this 12th day of September, 2016, by and between Dolores Satterthwaite (hereinafter the "Landlord"), Victoria Manages and Jams McKinney doing business (dba) Great American Bistro, LLC, (hereinafter the "Tenants"), collectively hereinafter the "Parties."

WHEREAS, the Landlord is the owner of the land and improvements commonly known and numbered as 1545 New Jersey Avenue, NW, Washington, DC, 20001 (hereinafter the "Property").

WHEREAS, the Tenants desire to lease the Property from Landlord pursuant to the terms herein.

NOW THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and the mutual agreements herein contained, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged by the Parties, the Parties do hereby covenant and agree as follows, with the aforementioned recitations incorporated herein by reference:

**WITNESSETH:**

1. **TERM:** That Landlord hereby rents to Tenants the Leased Premises for the term commencing on the 12th day of September 2016, and ending on midnight of the 14th day of September, 2021.

2. **RENT:**

   a. **BASE RENT:** Tenants shall pay to Landlord during the term of this lease a rental amount of seven thousand dollars ($7,000) per month (hereinafter the "Base Rent"). Each installment shall be due in advance of the fifteenth day of each calendar month during the lease term to Landlord or at such other place designated by written notice from the Landlord. All rent monies are to be by check, except that upon nonpayment of one check by Tenants' bank, all further rental payments shall be by certified check or money order. All rent payments shall be made payable to Landlord or such other party as Landlord may so designate, in writing.

   b. **INCREASES TO BASE RENT:** The Base Rent shall increase after each twelve month period by the greater of Three Percent (3%) or the Consumer Price Index for the Washington DC Metropolitan Area, as maintained and published by the United States Department of Labor's Bureau of Labor Statistics, provided however that if such Index is no longer published, than the Index utilized by the District of Columbia Rent Administrator in determining annual Rent Control allowable rent increases shall apply. The adjusted Base Rent shall apply for the following twelve month term, but in no case shall the rent be lower than the Base Rent enumerated herein. Landlord shall provide Tenant with an annual statement of each increase of the rent and the computation by which the new Base Rent was determined, though failure to do so shall not waive Landlord's right herein to the increased Base Rent.

   c. **PROPERTY TAXES AND UTILITIES:** Tenant shall pay as additional rent 42% of real estate property taxes on the whole of Lot **0800**, Square **0510E**, and 42% of any special assessments on said Lot, including but not limited to Business Improvement District (BID) assessments. Such taxes shall be owed by Tenant to Landlord on a bi-annual basis, prior to the date by which such amounts are due to the collector of the tax. Landlord has the unilateral right to pay such taxes on Tenant's behalf, at which time the entirety of such amount shall be immediately due and owing from Tenant to Landlord

Landlord Tenant Tenant

as additional rent. Tenant shall be entirely liable and responsible for all utilities. Landlord has the unilateral right to pay such utilities on Tenant's behalf, at which time the entirety of such amount shall be immediately due and owing from Tenant to Landlord as additional rent

d. **COMPENSATORY FEES**: Any and all payments received after the first (1st) day it is due, as noted herein, shall be subject to a late fee of ten percent (10%) of the amount due, as well as interest at the rate of 1 per cent (1%) per month, both of which the Parties agree approximate the Landlord's administrative and other costs in dealing with such late payment, as additional rent. Also as additional rent, Tenant agrees to pay the sum of one hundred dollars ($100.00) for any check not honored by Tenants' bank. Nothing in this paragraph shall be construed to alter the dates by which payments required in this lease agreement are actually due.

e. **ADDITIONAL RENT**: Any and all amounts of rent, costs, fees, or other sum due from Tenants to Landlord enumerated herein shall be considered as additional rent for any and all purposes, including but not limited to determining what amount of rent is due to landlord in any Court proceeding or determining whether Tenant has defaulted herein.

3. **SECURITY DEPOSIT**: The Parties agree that Tenants has deposited the sum of seven thousand dollars ($7,000) with Landlord, which will be returned to Tenants at the conclusion of this Lease Agreement, without interest, if and only if Tenants have complied fully with the terms of this Lease Agreement, are current in their rental obligations, and the Leased Premises are left broom-clean, in a neat and clean condition, with no damages beyond normal wear and tear.

4. **POSSESSION**: The Tenants takes possession of the Leased Premises and covenant and agree that the statements and representations made on the signed or oral application, and in this Lease Agreement, are material representations relied upon by the Landlord and are incorporated into this Lease Agreement by reference, the falsity of which, in whole or in part, shall constitute a breach of this lease entitling the Landlord to possession of said premises, at its sole option. This Lease Agreement is conditioned upon the Landlord being able to secure possession of the Leased Premises from the existing tenant, if any, or from any other potential impediment to Tenants obtaining possession of the Leased Premises by the commencement date hereof, insofar as if the Landlord are unable to deliver possession of the Leased Premises to Tenants at said commencement date for any reason, such right of possession by Tenants shall be postponed until such time when the Leased Premises shall be put in suitable physical condition for occupancy, or until such time when the Landlord is able legally to deliver possession, without any liability on the part of the Landlord to the Tenant for any such postponement. Similarly, Tenants shall hold Landlord harmless and shall not be entitled to any abatement, remedy, or recourse against Landlord in the event the Leased Premises becomes uninhabitable through act of the District of Columbia or any other governmental agency.

5. **REPAIRS**:

a. **"AS IS" CONDITION**: Tenant takes the premises in "as is" condition, and shall be responsible for making all repairs and maintenance of the Leased Premises, and takes possession of said premises with the **full understanding** that they be and are **fully responsible** for maintaining the Leased Premises, sidewalks, and parking lots in good repair, in a clean, safe and sanitary condition, creating no waste upon the leased premises or any part of the building, inside or outside. Tenant shall also be liable for maintaining and upkeeping the plumbing, heating and electrical systems, exterior structure including

Landlord    Tenant    Tenant

but not limited to the roof, gardening, painting, plastering, refrigeration, carpentry and carpet. Tenant shall be liable for any asbestos removal or other environmental clean-up or removal of debris if any, caused by Tenant. Tenant's acceptance of the Premises shall be conclusive evidence that the Property is in good working order upon inception of the tenancy.

b. **TENANT RESPONSIBLE FOR REPAIRS**: Tenant shall be responsible for all repairs.

c. **TENANT RESPONSIBLE FOR FINES:** Tenants shall also be responsible for the payment of any fines levied by any administrative agency or governmental department on Landlord and/or the Property, including but not limited to fines issued by the Consumer and Regulatory Affairs Bureau ("DCRA") or Department of Public Works ("DPW"). In such instances, it shall be the Tenant's responsibility to challenge and adjudicate the fine or pay the fine. Provided, however, that Landlord shall have the unilateral right to pay the fines and charge the fines paid to the Tenants, as additional rent, plus the greater of attorney fees incurred or an administrative fee of $250.00 per occurrence. Tenants' failure to reimburse the Landlord for the entirety of these costs within 7 calendar days of receipt of the bill shall constitute a default under this lease.

d. **WORK BY TENANT:** Tenant agrees that all construction work by them upon the premises requires Landlord's consent and shall first be submitted to the Landlord for approval. Landlord has the right to deny consent for any reason. All work is to be done with permits and approved by D.C. Building Inspectors.

e. **GREASE TRAP MAINTENANCE:** If Tenant is to sell food, Tenant agrees to purchase and maintain a regular monthly grease trap maintenance service for which they will be solely liable to maintain. The grease traps are to be cleaned at least weekly, (or otherwise pursuant to DC Law) and provide a copy of the grease trap maintenance contract to Landlord within thirty (30) days after execution of this lease agreement. Tenant agrees to remain liable to Landlord and other tenants in the building for failure to maintain the building's grease traps to avoid water and /or sewer backups in the building or surrounding areas. Should Tenant fail to do so, Landlord may enter into a maintenance contract and bill it back to Tenant as additional rent due within (10) days plus twenty-five percent (25%).

6. **LIABILITY INSURANCE:** Tenant hereby agrees to purchase and maintain, at its own cost and expense, a One Million Dollar ($1,000,000.00) liability insurance policy and to accept liability pursuant to said policy of insurance for all acts of negligence, injury and/or death upon said premises, or any part of the building, inside or outside to their employees, representatives, sublessees, assignees, licensees, invitees, guests, visitors or the like, naming Landlord as an additional insured. Tenant further agrees not to do or permit anything to be done in, on or around the Leased Premises, or bring anything therein or thereon which shall in any way, shape or form increase the danger of fire or other insurance upon the Leased Premises, as provided by Landlord, or conflict with the fire, health or safety laws or regulations of the District of Columbia or Federal Government. Tenant agrees to hold Landlord harmless, and indemnify Landlord for all claims and/or monies expended, including attorney fees and court costs due to any loss, including but not limited to personal injury or any injury or damage to persons or property at any time in, around and upon the Leased Premises, and to indemnify Landlord or their assigns for any and all claims and/or monies expended, including Attorney fees and Court costs, due to personal injury or property damage in around or upon the subject premises. Tenant further agrees to secure and maintain plate glass windows and insurance. Tenant is to provide Landlord with current copies of said fire and liability insurance polices at the inception of each year of this tenancy. In addition, Tenant is to reimburse Landlord

Landlord Tenant Tenant

for all increases after the date of the execution of this Lease Agreement for all increases in the insurance paid by Landlord.

7. **PERSONAL PROPERTY:** All personal property, and/or fixtures in and on the Leased Premises shall be and remain at the sole risk of Tenant, their family, agents, employees, clients, invitees, guests, licensees, subtenants or assigns, and Landlord shall not be liable for any damage to, or loss of such property arising from any acts of God, negligence, or theft by any other persons or from any other cause whatsoever, nor shall Landlord be liable for any injury or alleged loss of business, inconvenience, annoyance, or injury to the Tenant or other persons in or about the premises, except when caused by the direct negligence of Landlord or his agents or employees.

8. **CASUALTY LOSS:** If the Leased Premises shall become uninhabitable by reason of fire or other casualty not due to the negligence of Tenant, their family, agents, clients, subtenants, assigns, invitees, guests or employees, Landlord shall not be obliged to rebuild or restore the Leased Premises. If the Leased Premises shall become uninhabitable, as set forth above, due to the negligence of Tenant, their family, agents, clients, subtenants, assigns invitees, guests or employees, Tenant shall be obliged to rebuild and restore the Leased Premises, at Tenant's sole expense, and shall be liable for all costs to do so.

9. **DEFAULT:** Upon violation by Tenant, their family, agents, clients, subtenants, assigns, invitees, guests or employees, of any of the non-monetary provisions and/or agreements herein contained, tenant shall be entitled to a written ten (10) day notice to cure any such violation/breach of this agreement, except that no notice will be required for the failure of Tenant to pay any rent, late fee, or additional rent, when due and payable, at the option of Landlord this lease and all things herein contained shall forthwith cease and determine and shall operate as a notice to quit, **any notice to quit as required by law, in each event being hereby expressly waived,** and Landlord may thereupon proceed to recover possession of the Leased Premises in accordance with the provisions of the law regulating proceedings in cases between Landlord and tenants. Should Tenant fail to pay rent in a timely fashion, breach any term or condition of this Lease Agreement, or vacate or abandon the premises prior to the expiration of the lease term, Tenant shall be liable for all costs, re-letting expenses, attorney fees, and all other damages realized by landlord, whether or not a lawsuit is actually filed. If eviction becomes necessary, Tenant shall remain liable for all costs of the eviction as well, in addition to rent and other fees and costs that will continue to accrue through the expiration of the lease term. **Tenant hereby waives the right to seek a Trial by Jury.** Tenant agrees that if any payment due herein is more than thirty (30) days late, Landlord, at its sole option, can elect to terminate this Lease Agreement, in which case Landlord is entitled to the entry of a nonredeemable judgment of possession based upon Tenant's nonpayment of rent. The filing of a Landlord and Tenant Complaint for Possession, seeking a nonredeemable judgment, shall be conclusive evidence of Landlord's election to terminate lease.

10. **SUBORDINATION TO MORTGAGE AND DEED OF TRUST:** This Lease Agreement is subject to and is hereby subordinated to all present and future mortgages, deeds of trust and other encumbrances affecting the demised premises or the property of which the Leased Premises are a part. The Tenant agrees to execute, at no expense to the Landlord, any instrument which may be deemed necessary or desirable by the Landlord or their lender(s) to further affect the subordination of this lease to any such mortgage, deed of trust or encumbrance, including an estoppel certificate.

11. **ASSIGNMENT AND SUBLETTING:** Tenant shall not voluntarily, involuntarily or by operation of law, assign, transfer, mortgage or otherwise encumber this Lease, Landlord's property, or any interest of Tenant

Landlord Tenant Tenant

therein, in whole or part, or sublet the whole or any part of the Leased Premises or permit the Leased Premises or any part thereof to be used or occupied by others, without first obtaining, in each and every instance, the prior written consent of landlord, which may be given or withheld at Landlord's sole discretion. Any consent by Landlord to any assignment or subletting shall be held to apply only to the specific transaction thereby authorized, and shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. If this Lease or any interest therein be assigned or if the Leased Premises or any part thereof be sublet or occupied by anyone other than tenant without the Landlord's prior written consent having been obtained thereto, Landlord may nevertheless collect rent from the assignee, sublessee or occupant and apply the net amount collected to the rents herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of the covenant herein against assignment and subletting or the acceptance of the assignee, sublessee or occupant as Lessee hereunder, or constitute a release of tenant from the further performance by Tenant of the terms and provisions of this Lease. If this Lease or any interest of tenant herein be sublet or assigned or if the whole or any part of the demised premises be sublet, or assigned, after having obtained the Landlord's prior written consent thereto, Tenant shall nevertheless remain fully liable for any causes of action accruing to Landlord and arising prior to or subsequent to any assignment, subletting, or later unauthorized occupancy, unless Tenant is specifically released of all further liability.

12. **ALTERATIONS:** Tenant agrees not to make any structural alterations, removals, installations, additions or otherwise in or to the subject premises, nor perform or cause to be done any work thereon or therein the Leased Premises without the prior written consent of Landlord, which consent may be unilaterally withheld. It is specifically understood that any and all such alterations, installations or additions to and upon the Leased Premises, including but not limited to carpeting, any other floor coverings, wall coverings, lighting fixtures and equipment, security systems, draperies, plumbing fixtures and equipment, window shades or blinds, whether installed at the expense of Landlord or Tenant, immediately become the property of Landlord, and shall, at the election of Landlord remain upon the Leased Premises and be surrendered with the Leased Premises, as fixtures, at the expiration of this Lease Agreement, without disturbance, molestation or injury. Should Landlord elect that any such alterations, installments or additions upon the Leased Premises be removed by Tenant upon termination of this Lease Agreement, Tenant hereby agrees to cause them to be removed and restore Landlord's premises to its prior condition, at Tenant's expense, or else Tenant agrees to reimburse Landlord for the costs of any such removal and restoration plus any and all other damages Landlord may suffer by reason of failure of Tenant to remove and restore Landlord's property. If Tenant utilizes a security system, whether installed and/or maintained by Landlord or Tenant, Landlord shall not be held liable for the effectiveness of any such system. Tenant holds Landlord harmless against any loss, cost, damage or expenses incurred due to the existence of any security system at or upon the leased premises.

13. **LIENS AND JUDGMENTS:** Tenant hereby agrees not to do any act which shall or may in any way encumber the title in and/or to Landlord's property as described herein, including allowing the Leased Premises to be subject to any mechanics' lien, labors' or materialmen liens. Tenant agrees to immediately satisfy any such liens or judgments rendered due to or related to the subject property and Tenant's use and/or occupancy thereof, holding landlord harmless, and reimbursing landlord, as additional rent, for any costs and/or damages they may have incurred due to any encumbrances. Any such encumbrance placed upon the property shall become due to owing immediately as additional rent.

14. **UTILITY CONSUMPTION AND TRASH REMOVAL:** Tenant hereby agrees not to overload the existing utility services. Landlord shall not be liable for damages or otherwise for any interruption in the

Landlord Tenant Tenant

supply of any utility to the demised premises, nor shall any interruption in the supply of any utility to the demised premises constitute any ground for an abatement or withholding of any of the rents reserved hereunder. Tenant shall not at any time overburden or exceed the capacity of the mains, feeders, ducts, conduits or other facilities by which such utilities are supplied to, distributed in or serve the demised premises. If Tenant desires to install any equipment which shall require additional utility facilities of a greater capacity than the facilities to be provided by Landlord, such installation shall be subject to approval by the District of Columbia, and Landlord's prior written approval of Tenant's plan and specifications therefore. Landlord does not warrant or guarantee the uniformity, efficiency or safety of the electrical, water or other power or utility service. Tenant agrees that Landlord shall not be liable for (i) any accident or damage to Tenant or its equipment, agents, employees, associates, or invitees, which may be caused by electrical currents, light, water or wires or by the heating and plumbing apparatus of the Building, (ii) any loss or damage to tenant in the building caused by rain, snow, or water that may leak into the demised premises, or for failure to furnish water, heat or air-conditioning unless caused by the gross negligence or willful act of the landlord. Tenant will be responsible for repairing any deficiency or malfunction in the utilities in the demised premises, due to their use or negligence. The Landlord may turn off the utilities without any liability or abatement of rent for the conduct of repair work or other sufficient reason by giving 48 hours notice of discontinuance of service. Emergency termination of utilities, heat and air-conditioning may be made without notice and without abatement of rent.

15. **COMPLIANCE WITH ALL LAWS, RULES AND REGULATIONS:** Tenant agrees not to use or permit any part of the subject premises to be used for any disorderly, unlawful or extra hazardous purposes. Tenant agrees not to use or store any flammable liquids or the like upon the premises. Tenant further agrees to be bound and liable to obtain all necessary licenses, permits and zoning requirements to utilize the subject premises as provided for herein, holding Landlord harmless for the retention of same. Tenant agrees to maintain the public sidewalks and not to create or maintain any obstruction in the areas of said property, nor create, perform or cause any noise, odors, smoke or vapors to emanate therefrom, which might injure the property or annoy or disturb the neighboring occupants and comply with all laws, rules, regulations and municipal orders applicable to the subject property, and its use and occupancy by Tenant, including the Americans with Disability Act and District of Columbia Human Rights Act, holding Landlord harmless.

16. **TENANT'S CONDUCT:** Tenant shall hold Landlord harmless and be responsible for all conduct and operation of the business to be conducted in and upon the subject property.

17. **BINDING EFFECT:** All rights, remedies, responsibilities and liabilities herein given to or imposed upon any and all parties to this Lease shall extend to their respective heirs, successors, executors, administrators and assigns. Landlord shall have the right to fully assign this lease or their interest, without the consent of tenant, their subtenants, assigns or anyone else in possession.

18. **NOTICES:** All notices required to be given hereunder by either party shall be given personally, by electronic mail, or in writing, United States certified mail, return receipt requested, postage prepaid, as follows:

| If to Landlord: | With a copy to: |
|---|---|
| Dolores Satterthwaite<br>1220 Girard ST NW<br>Washington, DC 20009 | Aaron Sokolow, Esq.<br>Battino & Sokolow PLLC<br>1213 33rd St., NW |

Landlord    Tenant    Tenant

Washington, DC 20007
Aaron@SokolowLaw.com By email and mail

| If to Tenant: | With a copy to: |
| --- | --- |
| Great American Bistro, LLC<br>1545 New Jersey Avenue, NW<br>Washington, DC 20001 | Gary T. Brown, Esq.<br>Gary T. Brown & Associates<br>1050 17th St.,NW, Suite 1000<br>Wash., DC 200036 GTBfirm@GaryTBrown.com |

19. **COSTS AND FEES:** In the event that Tenant is in default of any provision herein, whether or not legal proceedings are actually instituted against Tenant, or their sublessees, employees or assigns, by Landlord or their assigns, or by any other person(s) for default or breach of this Lease Agreement, or for recovery of possession, or for personal injury or otherwise, then Tenant agrees, in all cases, to be liable for all Court costs and Attorney fees incurred by Landlord or their assigns, to institute, prosecute and/or defend all actions, or consult regarding Tenant's breach. If Landlord shall be named as a Defendant/Respondent in any action by any person(s) relating to Tenant's use and occupancy of the Leased Premises, Tenant further agrees to be liable for and/or indemnify Landlord for all Court costs and Attorney fees incurred by Landlord to defend any such action, holding Landlord harmless for all costs and judgments, as additional rent herein, due after ten (10) days' notice to Tenant.

20. **USE:** That Tenant agrees that use and occupancy of the Leased Premises shall be for prepared food and restaurant, and for no other purpose. Tenant agrees to provide full supervision of all participants, guests, invitees, and to monitor and escort participants to and from the premises. Landlord reserves the right to deny entrance and use of the premises by any and all undesirable or uncooperative employees, agents, guests, invitees or otherwise into Tenant's rented space. Tenant agrees not to the Leased Premises for any disorderly, illegal, impermissible, or other use.

21. **SURRENDER OF POSSESSION:** Tenant agrees to keep and maintain the Leased Premises and the fixtures therein in good order and condition and will remove all of its personal property at the surrender of possession of the Leased Premises, leaving said property in broom clean condition, free of trash and debris, ordinary wear and tear accepted, surrendering all keys to landlord for the premises, and informing landlord of all combinations on locks, safes, and vaults, if any, on the leased premise

22. **SIGNS AND EQUIPMENT:** Tenant shall not place, or caused to be placed, any sign, advertisement or notice, inscribed, painted, affixed or displayed on any part of the inside or outside of the building, except on the directories and the doors of the offices, and then only in such place, number, size, color and style approved in writing by landlord, and the District of Columbia Department of Consumer and Regulatory Affairs. If any such sign, advertisement or notice is exhibited without prior written consent, landlord shall have the right to remove the same, without liability to tenant and tenant shall be liable for any and all expenses incurred by landlord due to said removal as additional rent herein, payable within ten (10) days of submission of landlord's bill to tenant. Any such permitted use, including directories and name plates, shall be at the sole expense and cost of the tenant. Landlord shall have the right to prohibit any advertisement, sign or notice of tenant which in landlord's opinion tends to impair the reputation or desirability of the building. Landlord shall have the right to prescribe the weight and position of safes, heavy and/or hazardous equipment, and other heavy equipment or fixtures. Any and all damages or injury to the demised premises, caused by said equipment or due to such equipment being on the demised

Landlord Tenant Tenant

premises, shall be immediately repaired by, and at the sole cost of tenant. If the cost is had by the landlord, the cost shall be payable by tenant as additional rent as described above. Landlord shall not be responsible for any damage to the personal property or person or persons or charges for moving the same, except as caused by the willful or negligent act of landlord. Tenant agrees promptly to remove from the sidewalks adjacent to, in or about the building any of the tenant's furniture, equipment or other material there delivered or deposited.

23. **INDEMNIFICATION:** Landlord shall not be liable to Tenant or to Tenant's (or any of Tenant's subtenants') employees, assignees, representative, sublessees, licensees, guests or visitors, for any injury or damage to any person or property (i) caused by any act, omission or neglect of tenant, any other tenant of the demised premises, or any other person, or (ii) arising from or incident to the use by tenants (or any of Tenants' subtenant's or assignee's employees, representatives, sublessee's, licensees, guests or visitors of the demised premises, including without limitation the land, improvements thereon, building and appurtenances thereto) or any business conducted thereon regardless of the cause. Tenant covenants and agrees, absolutely and forever, to indemnify and hold landlord harmless from and against any and all liability, damages, expenses, causes of action, suits, claims, or judgments arising directly or indirectly from any such aforesaid injury or damage to persons or property. Tenant will indemnify and hold landlord harmless from and against any loss, damage or liability occasioned by or resulting from any default hereunder or any willful or negligent act on the part of Tenants, its agents, employees, or invitees, subtenants, assignees, guests or persons permitted on the demised premises by tenant.

24. **SEVERABILITY:** If any clause or provision of this Lease Agreement is determined by a Court of competent jurisdiction to be void, invalid, unlawful or inoperative, any such voidness, invalidity, unlawful or inoperativeness shall not affect the remainder of this Lease Agreement, which shall remain in full force as though such void, invalid, unlawful or inoperative clause had not been contained herein.

25. **WAIVER:** No waiver of, or failure to enforce, any breach of any covenant or agreement herein contained herein by Landlord shall be construed to be a waiver of the covenant or agreement itself, or of the subsequent breach thereof, or shall in any way limit Landlord's entitlement or ability to enforce such covenant or agreement, at any subsequent time, at Landlord's sole discretion. Issuance of a Notice to Quit, Correct, or Vacate, shall be conclusive evidence of Landlord's valid and lawful revocation of any prior acquiescence, consent, or alleged consent.

26. **PARKING:** Landlord has made no guarantees or representations as to parking at or around the Leased Premises and it is only allowable if allowed by DC law and governmental interpretation thereof. No inoperable vehicles are to be kept or allowed on the Property.

27. **CONDEMNATION:** Landlord represents that they are unaware of any condemnation or eminent domain proceedings pending or expected to effect the herein described property. In the event that condemnation or eminent domain proceedings shall be instituted against the herein described property, tenant agrees that they will make no claim for compensation in any such proceedings, and agree to terminate this lease when title to the herein described premises is taken by the condemning authority, if not sooner, pursuant to the terms of this lease on sixty (60) days' notice. Landlord agrees to abate the rental provided for herein effective upon the transfer of title to the condemning authority. In cases of a partial condemnation, the above shall apply, however, tenant shall be entitled to prorated reduction in their monthly rents.

Landlord Tenant Tenant

28. **TIME IS OF THE ESSENCE:** In all provisions of this lease agreement, time shall be considered to be of the essence.

29. **INSPECTION/ACCESS:** Tenant will allow Landlord access at any time for the purpose of inspection and Tenant shall always ensure that Landlord has any and all keys to the Leased Premises in order to gain immediate access to the Leased Premises, in the absence of Tenant, in the event of an emergency. Tenant will allow Landlord, or their agent to place, and Tenant agrees to maintain, a sign upon the premises during the last three (3) months of this Lease Agreement offering the Leased Premises for sale or lease. Tenant agrees to provide access to any prospective tenant or purchaser for their inspection when accompanied by landlord or their agent.

30. **FOOD/VENDING MACHINES:** Tenant will not install or allow to be used on the premises any amusement devise for which payment is to be made, no food vending machines, music machines or other coin operated devise, except a pay telephone, without prior written consent of landlord, and retention of the appropriate government permit by the District of Columbia.

31. **OPTION TO RENEW:** Tenant shall have the option to renew this Lease Agreement with Landlord for an additional five years. Base rent to be determined by two independent appraisers.

32. **HOLDING OVER BY TENANT:** In the event that the Tenant shall remain in the Leased Premises after the expiration of the term of this Lease Agreement, such holding over shall not constitute a renewal or extension of this lease. The Landlord may, at its sole option, elect to treat the Tenant as a squatter with no right of possession upon expiration of a commercial lease term, in which case Landlord may immediately be entitled to a nonredeemable judgment of possession in a case filed at the DC Superior Court, Landlord and Tenant Branch, without the necessity of thirty (30) days written notice to tenant. In such instance, the Parties consent and agree that the fair use and occupancy value of Tenants' post-tenancy occupancy shall 200% of the Base Rent plus all Additional Rent identified herein due at the time immediately prior to the expiration of the lease term, plus any increases. Alternatively, Landlord may, at its sole option, elect to treat Tenant as a week-to-week tenant, subject in all the terms and conditions of this lease, except as to duration and rent amount thereof. The weekly rent shall be 200% of the Base Rent plus all Additional Rent identified herein due at the time immediately prior to the expiration of the lease term, plus any increases. Landlord shall be entitled to sever Tenant's week-to-week tenancy by providing Tenant with a written Thirty (30) Day Notice of their intent to terminate the tenancy. Landlord reserves the right to seek an increase in rent during the month to month tenancy. Tenant must give Landlord a Ninety (90) Day Notice to terminate the tenancy.

33. **BROKERS:** The Parties acknowledge that no broker or consultant is entitled to any fees for negotiating, or in connection with, this Lease Agreement.

34. **DEMOLITION:** If Landlord determines, or elects at his option, to demolish the leased premises during the term of this lease agreement, Landlord shall provide Tenant with a 180 day notice of early termination of their lease agreement. Landlord need not obtain a demolition permit prior to issuance of any such notice.

35. **PETS:** Tenant, their subtenants, assigns, guests, agents, employees, or invitees shall not allow or maintain the presence of any pets upon the leased premises without the prior and written permission of the landlord, first had and obtained.

Landlord Tenant Tenant

36. **NO OPTION TO PURCHASE:** Tenant shall not have an option to purchase the Leased Premises.

37. **NO PARTNERSHIP:** This Lease Agreement does not create any partnership between landlord and tenant hereto.

38. **SALE OF BUSINESS:** Tenant shall not sell or transfer any part of the business to be conducted upon the leased premises during the term of this Lease Agreement, without prior written permission of the Landlord and approval of the new owners/ investors/ tenants by Landlord, which may be given or withheld at Landlord's sole discretion. There will be a One Thousand Dollar ($1,000.00) fee, payable by Tenant to Landlord, as additional rent, to compensate Landlord for the necessity to review the sale documents and new applicants and prepare an Amendment to the existing Lease, if needed.

39. **RIGHT OF REDEMPTION:** If any payment due herein is more than ten (10) days late, Landlord, at its sole option, can elect to terminate this Lease Agreement, in which case Landlord is entitled to the entry of a nonredeemable judgment of possession based upon Tenant's nonpayment of rent. The filing of a Landlord and Tenant Complaint for Possession, seeking a nonredeemable judgment, shall be conclusive evidence of Landlord's election to terminate lease.

40. **MISCELLANEOUS:**

a. This Lease Agreement shall be construed under the laws of the District of Columbia. Any and all litigation hereunder shall also be had in the District of Columbia, except post-judgment execution.
b. This Lease Agreement contains the entire agreement between the parties concerning the subject premises. No representations, inducements of agreements, oral or otherwise between the Parties shall have any effect unless executed, in writing, by the Parties hereto, their successors, or assigns, and is attached to this lease as an addendum or amendment, executed in the same formality as this lease. The Parties agree to be bound by these terms, statements, conditions, covenants and representations.
c. The titles and paragraphs of this lease are for convenience of the parties only and shall not be construed to limit the scope of any particular provision(s) of this Lease Agreement.
d. All of the terms, covenants and conditions of this lease shall inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns of the parties hereto.
e. This Lease Agreement shall not be construed against the Party that drafted it, but shall be construed as if all Parties drafted it.
f. Any term used in singular form is to be interpreted in the plural form as well. Any term used in the plural form is to be interpreted in the singular form as well.

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this **Lease Agreement** to be executed and sealed, all done as of the date first herein above written:

**[signatures on following page]**

Landlord Tenant Tenant

**LANDLORD**

______________________________(SEAL)
DOLORES SATTERTHWAITE DATE

______________________________
WITNESS

**TENANT**

______________________________ 9/12/16 (SEAL)
VICTORIA MANAGES DATE
Individually, and as Great American Bistro, LLC
Fed ID #:____________________

______________________________
WITNESS

______________________________ 9/12/16 (SEAL)
JAMES MCKINNEY DATE
Individually, and as ____________________
Fed ID #:____________________

______________________________
WITNESS